**STATE of Utah, Plaintiff and Appellee,**

v.

**Marlin Dean HOYT, Defendant and Appellant.**

**No. 890632–CA.**

Court of Appeals of Utah.

Jan. 30, 1991.

---

Jay Fitt (argued), Orem, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., for plaintiff and appellee.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Marlin Dean Hoyt appeals from a conviction for sexual abuse of a child, a second degree felony. *See* Utah Code Ann. § 76–5–404.1 (1990). We affirm.

## FACTS

Defendant is a former over-the-road truck driver, who had custody of his nine year-old daughter, the victim in this case. During 1985 and 1986, the daughter resided in Springville with a family friend when defendant was away on extended trips. When defendant returned to Springville, he would often take his daughter to stay with him at a local motel, typically for visits of three to four days in duration with approximately one such visit each month.

In early January 1986, a motel housekeeper found a pair of girl's panties in the bathroom trash can in the room in which defendant and his daughter were registered. The panties were soiled with a substance the housekeeper believed to be semen. The housekeeper had earlier observed that only one of the two double beds in the room appeared to have been used. Upon finding the panties, she contacted a Springville Police Department detective to report her discovery.

The detective notified the family friend of the incident, and together they approached the daughter. The child reported that defendant had manually fondled her vaginal area and had inserted his penis into her vagina. Defendant was arrested on February 27, 1986, and charged with rape of a child. The information was later amended to charge sexual abuse of a child. At trial, the child testified that defendant had forced her to watch a pornographic film and then molested her. She described defendant's ejaculation onto her. She testified that she asked him to stop because of the pain inflicted in forcing his penis into her. Defendant refused, telling her that it would soon feel better.

Defendant was convicted after a jury trial. He did not appeal his conviction within the appropriate time, and later filed a petition for postconviction relief. After the trial court denied the requested relief, defendant appealed the denial to this court, which remanded for resentencing pursuant to *State v. Johnson,* 635 P.2d 36, 38 (Utah 1981). Defendant was resentenced to a term of one to fifteen years. This appeal followed.

On appeal, defendant raises several issues. Defendant asserts that 1) he was denied his constitutional right to a speedy trial, 2) the court erred in denying his motion for a more precise statement of the date, time, and place of the offense, 3) he was denied his right of confrontation because the victim was not seated in his line of sight when she testified, 4) the court improperly allowed an employee of the county attorney's office to sit near the victim as she testified, 5) the court improperly admitted certain hearsay and expert testimony, 6) his motion for a new trial was improperly denied,[1] and 7) he was denied the effective assistance of counsel.

## SPEEDY TRIAL

Defendant did not post bail, set at $50,000, and argues that his trial was impermissibly delayed while he remained in custody. Defendant was jailed for 124 days before his trial began. Defendant claims that this delay violated the speedy trial provision of Utah Code Ann. § 77–1–6(1)(h) (1990), which requires that trial commence within thirty days after arraignment if the accused is not able to post bail, and if the "business of the court permits."[2] However, section 77–1–6 is directory in nature, not mandatory. *State v. Menzies,* 601 P.2d 925, 926 (Utah 1979). Nonetheless, a period of time between arrest and trial in excess of the statutory directive may well be a "triggering mechanism" for heightened scrutiny of a claim that the right to a speedy trial was denied. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). We therefore proceed to determine whether

---

1. This issue turns on facts not before us in the record, and we therefore decline to address it.

2. While defendant premises his argument on statutory grounds, section 77–1–6(1)(h) is designed to implement the "speedy trial" guaranty of the Sixth Amendment of the United States Constitution and Article I, section 12, of the Utah Constitution. Therefore, even though defendant does not present constitutional arguments to the court, we analyze his claim with reference primarily to Sixth Amendment cases.

the delay was constitutionally impermissible. *See* note 2, *supra.*

The United States Supreme Court has rejected rigid time requirements to establish whether the right to a speedy trial has been violated, *id.* at 521, 92 S.Ct. at 2187, suggesting instead several factors to guide courts in making this fact-sensitive determination. In *Barker v. Wingo,* the Court outlined four factors in a balancing test: "[1] Length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. We consider each of these factors in turn.

The length of delay, 124 days between arrest and trial, is surely of concern but we cannot state that it is "presumptively prejudicial." *Id.* The length of delay is within the range of delays which have passed constitutional muster. *See State v. Trafny,* 799 P.2d 704, 708 n. 16 (Utah 1990) (citing various cases with delays of 4½ years, 7 months, 12 months, 3½ months and 4½ months).

Turning to the second factor, there were several reasons contributing to the delay. Defendant filed motions to dismiss and for a more definite statement of the time, date, and place of the offense, as well as a request for a polygraph examination. Defendant concedes that these actions contributed to the delay. When a defendant's actions cause delay in the trial date, the right to a speedy trial is temporarily waived by those actions. *State v. Banner,* 717 P.2d 1325, 1329–30 (Utah 1986). *See also Trafny,* 799 P.2d at 708 n. 15.

A portion of the delay was attributable to illness of the trial judge. We note that the language of Utah Code Ann. § 77–1–6(1)(h) (1990) provides that the business of the court is a valid factor to be considered in setting the trial date. We are mindful that the "right to a speedy trial is meant to be a shield against oppression,

and not a sword to be used to decapitate the processes of justice." *State v. Hafen,* 593 P.2d 538, 541 (Utah 1979). The doctrine of judicial immunity is a legal rather than a medical one; it does not, regrettably, offer any protection against viruses. No constitutional violation occurs when a hearing is cancelled because a judge is indisposed.

The temporary unavailability of a witness for the state also contributed to the delay. The Supreme Court has recognized that witnesses, defendants, and counsel may have other obligations which necessitate some delay in getting a matter tried. *See Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192. In sum, the reasons for delay in this case were legitimate bases for a trial date later than that prescribed in Section 77–1–6(1)(h) (1990).

The third factor, whether defendant objected in timely fashion to the delay and asserted his right to a speedy trial, may be summarily dealt with. There is no claim nor any indication in the record that defendant asserted his right to a speedy trial at any time during the pre-trial stage of this matter.

The final factor to be considered is prejudice to the defendant. Defendant in this case has failed to present any argument that he was actually prejudiced by the delay,[3] nor does the record before us independently suggest that defendant was hampered in his defense by the 124–day period. Accordingly, we reject defendant's claim that he was denied his constitutional right to a speedy trial.

## DEMAND FOR NOTICE OF DATE, TIME AND PLACE

In pursuit of the claim that he was entitled to more specificity of the charge against him, defendant, in his brief, makes vague references to concepts of due pro-

---

**3.** Defendant was given credit against his sentence for all pre-trial time in custody. Defendant makes cursory reference in his brief to the "classic and traditional defense of alibi." However, no claim is made that defendant had an alibi, only that if he had one, he might have

been prejudiced by the delay. Such fanciful and hopeful argument, when without any apparent basis, will not be considered by this court. *See Demetropoulos v. Vreeken,* 754 P.2d 960, 965 (Utah Ct.App.1988) (Jackson, J., concurring).

cess and equal protection of the law. Defendant, however, fails to provide any legal analysis or even bare citation to supporting authority.[4] The state invites us to decline to rule on this claim, insofar as it may be divined from the brief, in accordance with *State v. Amicone*, 689 P.2d 1341, 1344 (Utah 1984) and Utah R.App.P. 24(a)(9). Notwithstanding, the state has undertaken to argue that defendant is not entitled to relief on the merits of this claim. We readily agree that defendant cannot prevail on his claim that he was deprived of due process or equal protection of the law by denial of his motion for a more certain statement of the time, date, and place of the offense.

 We recognize that prosecution of sexual offenses involving child victims often requires somewhat generic testimony as to the particulars of time and place. Delayed discovery and reporting are common in such cases. However, the law is clear that time and place, except insofar as pertinent to the statute of limitations, are not integral to a charge of child sexual abuse. *State v. Fulton*, 742 P.2d 1208, 1213 (Utah 1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988); *State v. Robbins*, 709 P.2d 771, 772 (Utah 1985). *See also* Utah R.Crim.P. 4(b). Even so, the prosecution considerably narrowed the scope of time and place by alleging that the charged sexual abuse occurred at a particular motel in Springville. Defendant was registered at the motel for four well-defined periods of time over the course of four months, during one of which periods, and at which place, the abuse was alleged to have occurred. We find no error in the court's denial of defendant's motion for a more precise statement of the time and place of the charged offense. *See generally People v. Jones*, 51 Cal.3d 294, 792 P.2d 643, 270 Cal.Rptr. 611 (1990) (providing extensive discussion of due process concerns regarding specificity of sex offenses involving children).

## RIGHT OF CONFRONTATION

 Defendant claims his constitutional right of confrontation was denied. He alleges that his daughter was seated out of his direct line of sight during her testimony. Defendant has completely failed to support this claim through citation to the record. The record reflects only that defendant and his counsel were seated at the table customarily used by the prosecution, and vice versa, at the request of the prosecution and absent any objection at trial from defendant. The prosecution's request was prompted by concern that defendant had allegedly scowled and made faces at the child witness at his preliminary hearing. Nothing in the record suggests that any barrier was erected, or that the table did not provide full view of court proceedings, including an open view of the witness stand. Defendant bears the burden of creating a record for the appeal of Confrontation Clause issues. *State v. Nelson*, 725 P.2d 1353, 1357 (Utah 1986).

 Defendant argues on appeal that Utah R.Crim.P. 15.5 provides the exclusive method by which a child witness may testify other than by taking the witness stand in a regularly configured courtroom facilitating the most direct eye contact between witness and accused.[5] We find no violation of the rule or of defendant's right of confrontation. Nothing in the language of Rule 15.5 can be fairly construed to support defendant's contention that other methods to accommodate child witnesses are prohibited. The rule is permissive, not exclusive. The trial judge has great discretion in the management of a trial, *State v. Parsons*, 781 P.2d 1275, 1282 (Utah 1989), and we find no abuse of that discretion in merely reversing the customary assignment of counsel tables. Indeed, the procedure employed by the trial court to accom-

---

**4.** Defendant does contend in his brief that the true parties to this prosecution are the defendant and "a criminal justice system that is out of control," resulting in a "true American tragedy." Such emotional and hyperbolic arguments have little place in appellate briefs.

**5.** Once again, defendant has not provided this court with any argument, citation, or even suggestion of authority to support this contention.

modate the child victim was less of an intrusion on defendant's confrontation rights, and less disruptive of the trial process, than would have been the elaborate video transmission system contemplated in Rule 15.5

■ Defendant calls our attention to the recent United States Supreme Court decision in *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), in support of his claim that he was denied the right of confrontation. *Coy* is indeed germane to defendant's claim, although not in the fashion suggested by defendant. In *Coy,* a majority of the Court held that a one-way screen placed between the defendant and child witnesses violated the defendant's right of confrontation.[6] However, the Court noted that "[t]he Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions." *Coy,* 108 S.Ct. at 2802. *See also id.* at 2804–05 (O'Connor, J., concurring) (procedures which provide for testimony while the child witness is in the same room present no Confrontation Clause problems); *State v. Nelson,* 725 P.2d 1353, 1356 (Utah 1986) ("essence of the confrontation right is the opportunity to have the accusing witness in court and subject to cross-examination.... If the witness is physically present ... these values would seem to be satisfied."). We find no constitutional requirement that an accused be able to establish eye contact with a witness who is looking straight ahead. Accordingly, we reject defendant's claim that his confrontation rights were denied.

## COMPANION SEATED WITH CHILD WITNESS ON THE STAND

The court allowed a representative from the Victim Assistance Program of the Utah County Attorney's office to sit near the child as she testified. The representative did not coach or actively encourage the witness, but remained silently at her side as a referent of familiarity and unbetrayed trust. Defendant claims this action created an aura of bias against him but, once again, in violation of Utah R.App.P. 24(a)(9), defendant's brief contains no citations to authority or legal argument in support of his contention.

■ It is established law, in this jurisdiction and others, that a witness of tender years may be accompanied by an adult to ease the inherent emotional turmoil of testifying in court, usually against a person in whom the child had once reposed his or her trust. *State v. Keeley,* 8 Utah 2d 70, 328 P.2d 724, 725 (1958); *Commonwealth v. Pankraz,* 382 Pa.Super. 116, 554 A.2d 974, 979 (1989); 81 Am.Jur.2d *Witnesses* § 416 (1976). We reiterate our reference to the broad discretion for trial management vested in trial judges, *State v. Parsons,* 781 P.2d 1275, 1282 (Utah 1989), and find no abuse of that discretion in permitting the Victim Assistance representative to sit near the witness.[7]

## EXPERT TESTIMONY

■ In *State v. Rimmasch,* 775 P.2d 388 (1989), the Utah Supreme Court established significant new law in the area of expert testimony in child sexual abuse cases. Defendant claims error on three grounds under the *Rimmasch* decision: 1) the court allowed the expert witness to testify concerning the substance of interviews she had with the victim, 2) the expert offered an opinion that the victim was truthful in her allegations, and 3) the expert testified that defendant had, in her opinion, sexually abused his daughter. *Rimmasch* was decided three years after

---

**6.** The Court agreed unanimously that Confrontation Clause rights are not absolute. The majority made particular mention of the trial court's failure to make specific findings that the child witnesses required special protection, suggesting that if such a finding had been present in the record, the Confrontation Clause might not have been violated. Moreover, the Court remanded to the Iowa Supreme Court for a determination of whether the Confrontation Clause violation was harmless error. 108 S.Ct. at 2803.

**7.** Nor do we see prejudicial error in the manner in which the representative's function was explained to the jury.

defendant's trial and conviction, and is therefore inapplicable insofar as the decision created or altered the law. *See State v. Stilling*, 770 P.2d 137, 143 (Utah 1989) (decision not based on constitutional principles not applied retroactively); *State v. Vasilacopulos*, 756 P.2d 92, 94 (Utah Ct.App.) (when new law represents a dramatic departure from former law it will not normally be applied retroactively), *cert. denied*, 765 P.2d 1278 (Utah 1988). Moreover, defendant failed to object at the time of trial to the use of expert testimony now claimed as error, thereby waiving any objection. *State v. Eldredge*, 773 P.2d 29, 34–35 (Utah), *cert. denied*, —— U.S. ——, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989).

Defendant nonetheless alleges plain error in admission of the expert testimony. If we find that the trial court committed plain error, we may correct the error notwithstanding a party's failure to properly preserve the issue through a timely objection. *Id.* at 35; *State v. Braun*, 787 P.2d 1336, 1341 (Utah Ct.App.1990). *See State v. Verde*, 770 P.2d 116, 121–22 (Utah 1989). Before applying the plain error rule, we must first determine whether the error was "plain," i.e., should the error have been immediately apparent to the trial court. *Eldredge*, 773 P.2d at 35. If it was, we then consider whether the error affected the substantial rights of the defendant, that is, "appellant must show a reasonable likelihood that absent the error, the outcome below would have been more favorable." *Verde*, 770 P.2d at 122.

With one caveat, we do not view the claimed errors as plain since the *Rimmasch* decision was still three years down the road at the time of trial in this case. The caveat concerns one of the three *Rimmasch* issues raised by defendant. Although treated in *Rimmasch*, this issue should have been entirely clear even before that opinion was announced.

Specifically, insofar as the expert testimony may be characterized as "bolstering" or "vouching" for the testimony of the child witness's credibility regarding a particular event, it was clearly impermissible under Utah R.Evid. 608(a). Opinion testimony concerning credibility must be limited to testimony addressing a witness's general reputation for truthfulness, leaving the resolution of credibility for the fact-finder. *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.), *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979). *See also United States v. Samara*, 643 F.2d 701, 705 (10th Cir.) (expert witness may not weigh evidence and determine credibility), *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981); J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 607[08] (1990). *Cf. People v. Koon*, 724 P.2d 1367 (Colo.App.1986) ("Child incest pattern testimony may incidentally give rise to an inference that a victim is or is not telling the truth about the specific incident.... However, this fact alone is insufficient to deny admission of the evidence, because expert testimony generally tends to bolster or attack the credibility of another witness.").

This rule represents a "time-honored principle" of evidence, *U.S. v. Bolick*, 917 F.2d 135, 138 (4th Cir.1990), designed to prevent the fact-finder from exchanging common sense for reliance on the imprimatur of a titled and learned expert witness. "[S]uch testimony is capable at times of so bolstering a witness' testimony as artificially to increase its probative strength with the jury...." *Homan v. United States*, 279 F.2d 767, 772 (8th Cir.), *cert. denied*, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960).

Nonetheless, we are not persuaded that the contested expert testimony in this case, insofar as it concerned the truthfulness of the daughter's allegations, satisfied the other requirement for reaching an unobjected to error, i.e., appellant has not shown "a reasonable likelihood that absent the error, the outcome below would have been more favorable." *Verde*, 770 P.2d at 122. Abundant other testimony offered by the family friend and the motel housekeeper corroborated the child's testimony, thus pointing to her truthfulness totally aside from the expert's opinion. The child's testimony was straightforward and no prior inconsistencies were shown. Only defen-

dant testified to the contrary. The verdict would clearly have been the same absent the expert's testimony. *Cf. State v. Rammel*, 721 P.2d 498, 501 (Utah 1986) (while admission of "expert's" testimony was erroneous, "its admission was harmless in view of the other evidence supporting defendant's conviction"); *State v. Iorg*, 801 P.2d 938, 940 (Utah Ct.App.1990) (admission of expert testimony not harmless where "[n]o physical evidence corroborated [child victim's] allegations," only other witness for state was challenged expert, other children present at time of alleged offense were not called by state, and additional witness corroborated parts of defendant's testimony, which in turn "was not entirely inconsistent with" testimony of child victim). Accordingly, we reject defendant's *Rimmasch* claims.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts he was denied his right to effective assistance of counsel at trial due to the claimed lack of preparation by his trial counsel, counsel's failure to object to the admission of evidence at trial, and a perceived conflict of interest because his trial counsel had applied and interviewed for a position with the County Attorney's office handling defendant's prosecution.

The record before us is insufficient to permit us to fully address defendant's claims of ineffective assistance of counsel. Nothing in the record establishes that trial counsel failed to conduct an adequate pretrial investigation. This claim could only be evaluated after evidentiary development, a process not possible within the

context of an appeal before this court. Defendant must avail himself of habeas corpus remedies to develop an appropriate evidentiary record relevant to these claims. In so observing, we of course offer no opinion on the merits of any particular issue.

To succeed on a claim of conflict of interest, defendant must "point to specific instances in the record to suggest an actual conflict or impairment of his or her interests...." *State v. Webb*, 790 P.2d 65, 75 (Utah Ct.App.1990). Defendant cannot claim error based on the mere appearance or hypothetical existence of conflict. *Id.* Defendant has not called our attention to any portion of the record which might suggest a demonstrable conflict of interest resulting from counsel's attempt to gain employment with the prosecutor's office.[8]

The record before us is adequate to resolve defendant's claim that counsel failed to object to certain evidence, notably the housekeeper's testimony concerning the soiled panties.[9] Defendant bears the burden of demonstrating that his counsel's performance fell below an objective standard of reasonableness. *State v. Frame*, 723 P.2d 401, 405 (Utah 1986). The alleged deficiency must be prejudicial to defendant. *State v. Lairby*, 699 P.2d 1187, 1203 (Utah 1989). In order to be prejudicial, the deficiency must suggest a reasonable probability that the outcome would have favored defendant had the deficient performance not occurred. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). *See also State v. Moritzsky*, 771 P.2d 688, 690 (Utah Ct.App. 1989) (reasonable probability exists when, but for counsel's acts or omissions, verdict would have been more favorable); *State v.*

---

8. The implication is that counsel might have been inclined to "throw" the trial so as to curry favor with the prosecution, who might reward her efforts with a job offer. The psychology of lawyers is otherwise. The best way for a lawyer to take herself out of consideration for a trial attorney position would be to engage in unethical behavior and to prove herself less than an able and skilled trial advocate in full view of her prospective employer.

9. Defendant also protests his trial counsel's failure to elicit discrepancies in the victim's testi-

mony during her cross-examination. Defendant asserts that certain discrepancies are manifested in a medical report. The copy of the report appended to defendant's brief is censored by black crayon lines. The state's brief contains a complete, unaltered copy of the medical report. The unedited copy of the report appears to fully correspond with the victim's testimony. We are troubled by the inclusion of a heavily edited version in defendant's brief and condemn any effort to mislead the court.

*Crestani,* 771 P.2d 1085, 1089 (Utah Ct. App.1989) (reasonable probability is a probability which would undermine confidence in the outcome). If defendant fails to demonstrate a reasonable probability of prejudice, we need not determine whether his counsel's performance was objectively deficient. *State v. Harper,* 761 P.2d 570, 571 (Utah Ct.App.1988).

■ Defendant does not articulate how he was prejudiced by testimony of the soiled panties. He does not claim, much less demonstrate, that exclusion of such testimony would have established a reasonable probability of a more favorable outcome. Nor are we persuaded, on our own review of the record, that in the absence of the housekeeper's testimony defendant would probably have had a more favorable result.[10]

### CONCLUSION

Defendant was not denied his right to a speedy trial. The denial of his motion for a more definite statement of the date, time, and place of the alleged offense was not erroneous. The court properly exercised its discretion in allowing an adult to sit with the victim while she testified. We find no plain error necessitating reversal in the admission of expert testimony. Finally, while further proceedings may be necessary to fully evaluate the merits of certain claims of ineffective assistance of counsel, defendant has failed to present us with evidence that he was prejudiced by his counsel's performance concerning anything which appears in the record before us. We have considered defendant's other claims and find them to be without merit. Accordingly, defendant's conviction is affirmed.

BILLINGS and JACKSON, JJ., concur.

**10.** We observe that mere failure to object to testimony regarding the panties is not necessarily deficient. Counsel may well have wished to limit the discussion concerning the alleged semen on the victim's panties and may have made the tactical decision to remain silent rather than to object and thereby focus protracted attention on the panties and the housekeeper's conclusion they were soiled with semen.