2007 UT App 82

**STATE of Utah, Plaintiff and Appellee,**

v.

**Terry James MARBLE, Defendant and Appellant.**

**No. 20060026–CA.**

Court of Appeals of Utah.

March 15, 2007.

---

Randall W. Richards and Dee W. Smith, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff. atty. gen., and Karen A. Klucznik, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges GREENWOOD, McHUGH, and THORNE.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Terry James Marble appeals from convictions of four counts of aggravated sexual abuse of a child. *See* Utah Code Ann. § 76–5–404.1 (Supp.1997) (amended 1998); *id.* § 76–5–404.1 (1999) (amended 2003).[1] We affirm.

## BACKGROUND [2]

¶ 2 Marble's daughter, A.S. (Daughter), was born in 1988 after Marble and Daughter's Mother (Mother) had been living together for two years. Eventually, Marble and Mother married in 1990, and had two additional children. From the beginning,

Marble and Mother's relationship was both physically and emotionally abusive. Marble, an alcoholic, not only abused Mother but at times also physically abused his children. Because of Marble's alcoholism and abuse, Mother left Marble several times during their marriage only to later return.

¶ 3 On September 11, 1997, Mother permanently separated from Marble taking the three children, including Daughter, with her. Mother also filed for divorce and obtained a protective order against Marble. In December 1997, Marble received and began exercising non-custodial visitation rights with his children. Marble and Mother's divorce became final in January 1998. The divorce decree awarded sole custody of the children to Mother, and Marble was granted visitation rights provided he did not use alcohol while with the children. In October 1998, Marble's visitation rights were terminated. During this period—from the time Mother permanently separated from Marble in September 1997 until Marble's visitation rights were terminated in October 1998—Daughter alleges that, on multiple occasions, Marble sexually abused her by rubbing her chest, digitally penetrating her vagina, and placing her hands on his penis.

¶ 4 Although the alleged incidents of abuse occurred in 1997 and 1998, Daughter did not report the abuse until 2002 when she entered the ninth grade. At that time, Daughter discovered that her friend had been sexually abused by a relative. Upon hearing her friend's story, Daughter became more comfortable with sharing her own experiences of abuse allegedly perpetrated by Marble. Daughter first confided in her friends and later confided in Mother, a therapist, and the police. Corporal Jeff Johnson, an officer with the Brigham City Police Department, was assigned to investigate Daughter's allegations against Marble. Johnson was already acquainted with Marble. On prior occasions, Johnson had responded to police

---

1. Because Marble's criminal acts occurred while previous versions of the criminal statutes were in force, we refer to the earlier sections of the Utah Code. *See Cook v. City of Moroni*, 2005 UT App 40, ¶ 1 n. 1, 107 P.3d 713.

2. Facts are recounted "in a light most favorable to the [jury] verdict." *State v. Hamilton*, 2003 UT 22, ¶ 2, 70 P.3d 111 (quotations omitted).

calls and participated in an arrest involving Marble.

¶ 5 In February 2003 Johnson arrested Marble, who was charged with ten counts of aggravated sexual abuse of a minor, five occurring between October 1997 and March 1998, and another five occurring on or after March 1998. Before trial, however, the State filed an amended information dropping the five charges related to the earlier time period.[3] The information alleged two aggravating factors: (1) that Marble, as the victim's father, occupied a position of special trust; and (2) that Marble had committed five or more acts of sexual abuse before, after, or as part of the same course of conduct. Before trial, defense counsel stipulated that Marble held a position of special trust over Daughter by reason of being her father. Following the stipulation, the State abandoned the second aggravating factor.

¶ 6 Marble waived his right to a preliminary hearing and proceeded to a jury trial. At trial, both Daughter and Johnson testified as prosecution witnesses. Daughter was the first witness called by the prosecution. Later, the prosecution called Johnson. During defense counsel's cross-examination of Johnson, the following dialogue ensued:

Q. [Defense Counsel:] ... [W]e've heard the testimony that, [Daughter] hated her father, was mad at him, lived in a terrible situation. Admittedly a situation I wouldn't want to live in. I don't have kids, but I wouldn't want my kids to live in that. Is it possible that she was coached in such a way as to make allegations that could be false?

A. [Johnson:] I guess your question here is ["I]s it possible?["] Yeah, that's possible. Do I believe that occurred? No.

Q. [Defense Counsel:] How did you come to that conclusion in this case?

A. [Johnson:] You know, one of the things I feel like I have become fairly adept at through my training and experience is discerning truthful behavior, especially truthful behavior in an interview. Every time I have interviewed [Daughter],

based upon her emotional response, her body positioning, her eye contact, everything that I have been trained to watch for, she has been in my mind been truthful.

Not only that, but I would say there has been so much corroborating evidence on her part that is not verbal as to what occurred that it lent an extreme credence to me that this was a truthful allegation.

At the time defense counsel elicited this testimony, counsel did not object to Johnson's characterization of Daughter as truthful. Instead, counsel pressed Johnson to recount the additional corroborating evidence that he relied on in his investigation. Counsel elicited testimony that tended to show that there was no physical evidence collected and that the only other corroborating evidence was an interview with Mother. Counsel also elicited testimony from Johnson that indicated Johnson knew Marble and Mother had a history of making allegations against one another. Finally, counsel explored Johnson's acquaintance with Marble through his involvement in previous investigations and a previous arrest. At the close of evidence, the jury returned a verdict of guilty on four counts of aggravated sexual abuse of a child. Marble appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 7 Marble asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment rights under the United States Constitution. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law," which we review for correctness. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

¶ 8 Marble asserts that he is entitled to a new trial because his defense counsel rendered ineffective assistance in violation of the Sixth Amendment. To prevail on his ineffective assistance of counsel claim Marble must show: "(1) that counsel's performance was objectively deficient, and (2) a reasonable probability exists that but for the deficient

---

**3.** After the close of the State's case, one of the remaining five charges was also dismissed on the ground that the State had presented evidence of only four—not five—incidents of abuse occurring on or after March 1998.

conduct defendant would have obtained a more favorable outcome at trial." *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under the first prong of the *Strickland* test, Marble asserts two alternative grounds for finding that defense counsel's performance was objectively deficient. First, Marble argues defense counsel was ineffective because counsel elicited testimony from Johnson that impermissibly bolstered Daughter's character for truthfulness in violation of rule 608 of the Utah Rules of Evidence, *see* Utah R. Evid. 608. Second, Marble claims that defense counsel was ineffective because counsel stipulated that Marble held a position of special trust over Daughter which relieved the prosecution of the burden of proving the aggravating factor beyond a reasonable doubt. We disagree with both contentions.

## I. Daughter's Truthfulness

■ ¶ 9 Under rule 608 of the Utah Rules of Evidence, "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation." *Id.* "This rule permits testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but *prohibits any testimony as to a witness's truthfulness on a particular occasion.*" *State v. Rimmasch,* 775 P.2d 388, 391 (Utah 1989) (emphasis added). In the realm of child sex abuse cases, Utah courts have held that rule 608 makes it "improper for an expert to express an opinion as to whether a child was truthful when making statements to the expert about sex abuse" and bars an expert from "express[ing] an opinion as to a child's truthfulness with respect to statements of child sex abuse." *State v. Ramsey,* 782 P.2d 480, 485 (Utah 1989); *see also State v. Nelson,* 777 P.2d 479, 480–81 (Utah 1989); *Rimmasch,* 775 P.2d at 391–93; *State v. Hoyt,* 806 P.2d 204, 210–12 (Utah Ct.App.1991). Furthermore, Utah courts have determined that a defense attorney's failure to object to expert testimony regarding a child victim's

truthfulness may, under certain circumstances, rise to the level of plain error. *See, e.g., Hoyt,* 806 P.2d at 211.

■ ¶ 10 Thus, Marble argues that because it is clearly impermissible under rule 608 and the *Rimmasch* line of cases for an expert "to express an opinion as to whether a child was truthful when making statements to the expert about sex abuse," *Ramsey,* 782 P.2d at 485, defense counsel was objectively deficient in eliciting testimony from Johnson indicating that he believed Daughter's allegations against Marble were truthful. At the core of Marble's argument is the notion that the presumption of adequate assistance is rebutted by a mere showing that defense counsel's acts or omissions amounted to plain error. We disagree. An inquiry into whether counsel was constitutionally ineffective is a separate and distinct inquiry from plain error review, especially where the defendant has conceded that trial counsel invited the alleged errors.[4] *See State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993) (holding that where "counsel's decision in leading the court into error falls below the standard of reasonable professional practice, we may find that counsel was ineffective"); *State v. Bullock,* 791 P.2d 155, 159 (Utah 1989) ("[T]he purpose of [the plain error] rule is in no way implicated if defense counsel consciously elects to permit evidence to be admitted as part of a defense strategy rather than through inadvertence or neglect."). Therefore, despite the fact that counsel's alleged errors may have satisfied the test for plain error, which we do not decide, we review the merits of Marble's ineffective assistance of counsel claim exclusively under the *Strickland* test.

¶ 11 Under *Strickland,* the defendant must first demonstrate that counsel's performance was objectively deficient. To do this, the defendant "must overcome the strong presumption that his trial counsel rendered adequate assistance, by persuading the court that there was *no conceivable tactical basis for counsel's actions.*" *Clark,* 2004 UT 25 at

---

4. Marble concedes that direct plain error analysis is inappropriate here because defense counsel invited the alleged errors by eliciting the challenged testimony and by stipulating to the challenged aggravating factor. *See State v. Dunn,*

850 P.2d 1201, 1220 (Utah 1993) ("We have held repeatedly that on appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error.").

¶ 6, 89 P.3d 162 (alteration, citation, and quotations omitted). Marble's bare assertion that "[t]here is no conceivable trial strategy to elicit and then allow that type of testimony especially when the case hinged on the victim's credibility," does not rebut this presumption.

■ ¶ 12 Utah courts have recognized that when viewing "the variety of circumstances faced by defense counsel," a conscious choice not to object to arguably inadmissible testimony may, at times, fall within "the range of legitimate decisions regarding how best to represent a criminal defendant," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. *See, e.g., State v. Clark,* 2004 UT 25, ¶ 7, 89 P.3d 162 (holding that counsel "may well have made a reasonable tactical choice" to not object to arguably inadmissible testimony); *State v. Pecht,* 2002 UT 41, ¶¶ 40–44, 48 P.3d 931 (holding that counsel's failure to object or request a limiting instruction for evidence of defendant's incarceration was sound trial strategy). Similarly, a defendant cannot demonstrate that counsel rendered an objectively deficient performance under the first prong of the *Strickland* test by merely showing that counsel elicited arguably inadmissible testimony. Instead, a defendant must still "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (quotations omitted), *quoted in State v. Litherland,* 2000 UT 76, ¶ 19, 12 P.3d 92.

¶ 13 When reviewing the transcript of defense counsel's cross-examination of Johnson in its entirety along with closing arguments, counsel's trial strategy is apparent. Counsel's cross-examination was engineered to highlight Johnson's motives and bias in conducting the investigation thereby undermining the overall quality of the State's case. *See Bullock,* 791 P.2d at 160 (noting that sound trial strategy may involve failing to object to testimony as to witness's belief of victim's allegations where belief is used to attack the "motives and methods" of the witness). It is true that defense counsel began his cross-examination of Johnson by eliciting testimony that tended to show that Johnson believed Daughter was truthful at the time she told him of the alleged abuse. However, counsel effectively used those statements to elicit additional testimony from Johnson that suggested he had relied too heavily on Daughter's allegations and therefore failed to adequately investigate. Counsel was able to get Johnson to admit that he was familiar with cases where children had been coached to make allegations that in truth did not occur. Following this testimony, counsel pressed Johnson for information as to whether there was any evidence corroborating Daughter's allegations. Johnson admitted that no forensic exams were done and no physical evidence was collected, and he also indicated that the only other corroborating evidence obtained came from an interview of Mother. However, counsel's questioning revealed that Johnson was aware that Marble and Mother had a history of making allegations against one another. Additionally, Johnson admitted that he had effectively failed to interview Daughter's siblings who had allegedly been present during at least one of the incidents of sexual abuse. Finally, counsel's questioning highlighted Johnson's prior history investigating and arresting Marble on unrelated charges. When viewed in its entirety, counsel's cross-examination demonstrates a tactical strategy of using Johnson's testimony—that he found Daughter truthful—as a foundation for suggesting that Johnson had failed to adequately investigate due to his misplaced reliance on Daughter's version of the events and his bias against Marble.

¶ 14 Defense counsel's trial strategy is illustrated by counsel's closing arguments when he stated:

I'm troubled by this case. I'm troubled by a Brigham City police officer who knows Terry Marble.... You know what, he knows him and he knows he's a bad person. And now these charges are brought and what does [Johnson] do to investigate? What does he do to investigate the case?

. . . .

[Johnson] was instructed by the prior county attorney ... to be careful. These people have accused each other of things in the past. Investigate this carefully....

What does he do? He ignores that. You know why? Because he leapt to the conclusion at the very beginning that Terry Marble, the town drunk, . . . is guilty of this crime, sexual abuse of a child.

No physical exam was done, no talking to any other witnesses. Why? . . . [Johnson] made a decision early on that by looking at [Daughter, "]I could tell by looking at her she's telling me the truth.["]

¶ 15 Because it is clear from the record that counsel had a conceivable trial strategy in eliciting the challenged testimony from Johnson, Marble has failed to demonstrate that defense counsel's performance was objectively deficient under the first prong of the *Strickland* test. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Therefore, "counsel's assistance was constitutionally sufficient, and we need not address the other part of the test." *State v. Holbert,* 2002 UT App 426, ¶ 53, 61 P.3d 291 (quotations omitted).

## II. Stipulation to Position of Special Trust

█ ¶ 16 Marble also argues that counsel's performance was deficient because, based on an oversight or misreading of the statutes in effect at the time of the alleged sexual abuse, counsel stipulated that Marble held a position of special trust with respect to Daughter thereby satisfying an aggravating factor of the crime.

¶ 17 Marble was ultimately charged under Utah Code section 76–5–404.1 with five counts of aggravated sexual abuse of a child occurring on or after March 1998. Because an amendment to section 76–5–404.1 took effect on May 4, 1998, two different versions of section 76–5–404.1 were applicable to Marble's conduct during the time frame of the charges. *See* Act of 1998, ch. 131, § 1, 1998 Utah Laws 418, 418. The 1997 version of the statute, *see* Utah Code Ann. § 76–5–404.1 (Supp.1997) (amended 1998), was applicable from March 1, 1998, through May 3, 1998, of

the charged period. Alternatively, the 1998 version, *see* Utah Code Ann. § 76–5–404.1 (1999) (amended 2003), was in effect on and after May 4, 1998. In his brief, Marble argued that, without exception, the 1997 version of the statute excluded natural parents from holding a position of special trust; and therefore, defense counsel's performance was objectively deficient when counsel stipulated to the aggravating factor for the March 1 to May 3, 1998, time period.[5] We disagree.

¶ 18 Prior to the 1998 amendment, Utah Code section 76–5–404.1 read in pertinent part:

> (3) A person commits aggravated sexual abuse of a child when in conjunction with the offense described in [s]ubsection (1) any of the following circumstances have been charged and admitted or found true in the action for the offense:
>
> . . . .
>
> (h) The offense was committed by a person who occupied a position of special trust in relation to the victim; "position of special trust" means that position occupied by a person in a position of authority, . . . and includes, but is not limited to, the position occupied by a youth leader or recreational leader who is an adult, adult athletic manager, adult coach, . . . *though a natural parent, stepparent, adoptive parent, or other legal guardian, not including a foster parent, who has been living in the household, is not a person occupying a position of special trust under this subsection.*

*Id.* § 76–5–404.1(3)(h) (emphasis added). Thus, contrary to Marble's contention, the plain language of the 1997 version of Utah Code section 76–5–404.1 does not categorically exclude *all* natural parents from holding a position of special trust. *See id.* § 76–5–404.1 (Supp.1997) (amended 1998). Rather, the statutory language exempted natural parents only when the "natural parent . . .

---

5. Marble does not argue that counsel's stipulation was objectively deficient when viewed in light of the 1998 version of the statute. The 1998 amendment expressly included natural parents within the enumerated classes of persons who held a position of special trust. *See* Act of 1998, ch. 131, § 1, 1998 Utah Laws 418, 418 (codified as amended at Utah Code Ann. § 76–5–404.1(3)(h) (1999) (amended 2003)) (" '[P]osition of special trust' means that position occupied by a person in a position of authority . . . and includes, but is not limited to, a . . . natural parent, stepparent, adoptive parent. . . .'").

ha[d] been living in the household" with the victim. *Id.*

¶ 19 At oral argument, Marble's counsel argued, for the first time, that the 1997 version of Utah Code section 76–5–404.1 was ambiguous. First, Marble argued that the statute's language did not make it clear whether the natural parent was required to live in the household with the victim before, during, or after the sexual abuse to fall within the meaning of the exemption. Thus, Marble argues, that because he lived in the same household with the victim six months prior to the period of the alleged abuse, he was exempted from occupying a position of special trust. Marble also contends that the statute did not define the phrase "living in the household" and that, therefore, it could have conceivably applied to a parent exercising non-custodial visitation rights. However, because Marble did not raise these statutory construction arguments in his brief, we decline to address the merits of the arguments here. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief."); *see also Rushton v. Salt Lake County,* 1999 UT 36, ¶ 25, 977 P.2d 1201 (Howe, C.J., concurring) (noting that appellant's issue was raised "too late" when he "first made [the] assertion in his oral argument"); *State v. Babbell,* 770 P.2d 987, 994 (Utah 1989) ("It is generally inappropriate to raise issues at oral argument that have not been designated as issues on appeal in docketing statement or in the briefs."); *First Sec. Mortgage Co. v. Salt Lake County,* 866 P.2d 1250, 1253 n. 6 (Utah Ct.App.1993) (refusing to reach arguments raised for the first time at oral argument).

¶ 20 However, even assuming that Marble's argument—that natural parents are categorically excluded from holding a position of special trust under the 1997 statute—has merit, Marble has failed to demonstrate that his counsel's performance was deficient, based upon the state of the law at the time of trial. *See State v. Dunn,* 850 P.2d 1201, 1228 (Utah 1993). "To establish a claim of ineffectiveness based on an oversight or misreading of law, a defendant bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." *Id.* When pursuing this analysis, we again "indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *State v. Garrett,* 849 P.2d 578, 579 (Utah Ct.App.1993) (quotations omitted). "Therefore, before we will reverse a conviction based on ineffective assistance of counsel, we must be persuaded that there was a 'lack of any conceivable tactical basis' for counsel's actions." *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998) (additional quotations omitted) (quoting *Garrett,* 849 P.2d at 579).

¶ 21 Here, we are not persuaded that there was "no conceivable tactical basis for counsel's actions." *State v. Clark,* 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis and quotations omitted). By stipulating that Marble, as Daughter's natural parent, held a position of special trust, defense counsel was able to persuade the State to drop the other aggravating factor—that Marble had committed five or more acts of sexual abuse before, after, or as part of the same course of conduct, *see* Utah Code Ann. § 76–5–404.1(g) (Supp.1997) (amended 1998); *id.* (Supp. 1999) (amended 2003). By doing so, defense counsel gained tactical leverage to oppose future attempts by the State to introduce evidence of sexual abuse outside the charged period. Thus, defense counsel's attempts at reducing the jury's exposure to evidence that would suggest a systematic history of sexual abuse, occurring for years before the period involving the charges, could be considered sound trial strategy. This is true, especially where, as here, Marble's tactical efforts were focused on denying the alleged abuse occurred, not on challenging the applicability of an increased prison term if convicted. *See State v. Alfatlawi,* 2006 UT App 511, ¶ 28, 153 P.3d 804 (noting that it may be a strategic choice to not challenge enhancement where defendant's main trial strategy is to deny involvement in the crime); *cf. State v. Pecht,* 2002 UT 41, ¶¶ 40–44, 48 P.3d 931

(finding that counsel's stipulation to defendant's history of incarceration could be considered "strategic element" of defense). Thus, because Marble did not rebut the presumption that counsel's actions fell within "the wide range of reasonable professional assistance," *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052 (1984), he cannot prevail on his ineffective assistance of counsel claim, *see State v. Bloomfield,* 2003 UT App 3, ¶ 12, 63 P.3d 110.

## CONCLUSION

¶ 22 Marble has failed to show that counsel rendered ineffective assistance when counsel (1) elicited arguably inadmissible testimony bearing on Daughter's truthfulness in making allegations of sexual abuse against Marble or (2) stipulated that Marble held a position of special trust with respect to Daughter. In both instances, Marble has failed to meet his burden of showing that counsel's acts or omissions were objectively deficient under the first prong of the *Strickland* test. Therefore, we hold counsel's performance was constitutionally sufficient.

¶ 23 Affirmed.

¶ 24 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.