2007 UT App 317

**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert Ellis COX, Defendant and Appellant.**

**No. 20060795–CA.**

Court of Appeals of Utah.

Sept. 27, 2007.

Linda M. Jones, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeanne B. Inouye, asst. atty. gen., Salt Lake City, for Appellee.

Before Greenwood, Associate P.J., Billings and Thorne, JJ.

OPINION

BILLINGS, Judge:

¶1 Defendant Robert Ellis Cox appeals from his convictions of four counts of aggravated sexual abuse of a child, *see* Utah Code Ann. § 76–5–404.1(4) (2003); four counts of sodomy on a child, *see id.* § 76–5–403.1(2) (2003); and one count of rape of a child, *see id.* § 76–5–402.1(2) (2003), all first degree felonies. We affirm.

## BACKGROUND [1]

¶ 2 L.D. (Mother) has four children, including S.W., a daughter born on November 15, 1987. Sometime in 1994, shortly after divorcing S.W.'s biological father, Mother entered into a relationship with Defendant, and they soon began living together.[2] After over two years of living together, Mother and Defendant married on September 12, 1996. They separated in March 1997, and subsequently divorced.

¶ 3 Prior to their separation, Mother and Defendant lived with Mother's children in four different residences, all in Sandy, Utah. S.W. was approximately six or seven years old when Defendant moved in and approximately nine years old when Defendant and Mother separated. Mother, a police dispatcher, often worked nights and weekends, while Defendant remained at home to babysit the children.

¶ 4 During the time he lived with Mother and her children, Defendant repeatedly molested S.W. At trial, S.W. testified that Defendant touched her "a couple of times a week." These sexual touchings "happened so many times [that S.W. could not] remember" the number. The touchings occurred in all of the Sandy homes, usually in Defendant and Mother's bedroom. Although S.W. did not testify as to the date the touchings began, Officer Lane Cole testified that based on his interviews with S.W. and Mother, he determined that, at a minimum, the abuse began in May 1996.

¶ 5 As part of the abuse, Defendant touched S.W.'s breasts and vagina with his hands. He also placed his mouth on her nipples. This was "one of the commoner [sic] things that would happen." Sometimes he would press his erect penis against her legs and vagina. On two or three occasions he put his little finger inside her vagina. Defendant also touched his mouth to S.W.'s vagina and on one occasion, he had her "[p]ut [her] mouth over his penis." On yet another occasion, Defendant placed his penis in her "bum."

¶ 6 S.W. described other specific incidents of abuse, including one that occurred while they shared a tent on a camping trip to Jordanelle Reservoir, Wasatch County, Utah. On that occasion, Defendant touched her nipples and vagina with his fingers. On another occasion, following the camping trip, Mother took S.W.'s sister to the hospital to remove a tick that the sister had gotten while camping. On that occasion, Defendant took S.W. to his bedroom in their Sandy home and touched her breasts and vagina with his hands, and then rubbed his penis "around [her] legs and vagina." Mother testified that both of these incidents occurred during the summer of 1996.

¶ 7 While most of these occurrences took place in Defendant and Mother's bedroom, on one occasion the abuse happened in S.W.'s bedroom. On that occasion, Defendant "touch[ed] his mouth on [S.W.'s] vagina and put his pinky finger there." The sexual touchings ended when Mother and Defendant separated in March 1997.

¶ 8 After a jury trial, Defendant was convicted of four counts of aggravated sexual abuse of a child, four counts of sodomy on a child, and one count of rape of a child. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Defendant first asserts that the State pursued convictions on four counts of aggravated sexual abuse of a child under an ex-post-facto law and argues that his convictions for aggravated sexual abuse should therefore be reversed or reduced. Next, Defendant contends that it was error for the State to present evidence at trial relating to two counts of aggravated sexual abuse of a child that occurred in Wasatch County. Specifically, Defendant argues that (1) Salt Lake County was an improper venue to try alleged incidents of abuse that occurred in Wasatch County and (2) evidence of sexual molesta-

---

1. "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Winfield*, 2006 UT 4, ¶ 2, 128 P.3d 1171 (quotations and citation omitted).

2. At trial, Mother testified that she and Defendant began living together sometime in 1994.

tion in Wasatch County violated rule 404(b). *See* Utah R. Evid. 404(b).

■ ¶ 10 Because none of these issues were raised before the trial court, Defendant argues them on appeal under the doctrines of plain error and ineffective assistance of counsel. Under the plain error doctrine, we will reverse the trial court's ruling only if " '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [the defendant].' " *State v. Hassan,* 2004 UT 99, ¶ 10, 108 P.3d 695 (quoting *State v. Parker,* 2000 UT 51, ¶ 7, 4 P.3d 778). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law," which we review for correctness. *State v. Clark,* 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

### I. Defendant's Ex-post-facto Claim

¶ 11 Defendant argues that he was charged and convicted for four counts of aggravated sexual abuse under a law that was adopted after he committed the alleged offenses. Specifically, Defendant asserts that the State relied on an ex-post-facto aggravating factor—that Defendant occupied a position of special trust-to increase the offenses from sexual abuse of a child to aggravated sexual abuse of a child. Defendant's ex-post-facto claim, reduced to its essence, is a challenge to the jury instruction on the four counts of aggravated sexual abuse of a child. The challenged jury instruction required the jury to find that "[D]efendant was a person who occupied a position of special trust to [S.W.]," and included stepparents and adult cohabitants in the definition of a position of special trust.

### A. Plain Error

¶ 12 First, Defendant argues that it was plain error for the trial court to give a jury instruction defining a position of special trust as including a stepparent and adult cohabitant. According to Utah case law,

[a]n ex-post-facto law is one that "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with crime of any defense available according to law at the time when the act was committed."

*State v. Norton,* 675 P.2d 577, 585 (Utah 1983) (quoting *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)), *overruled on other grounds by State v. Hansen,* 734 P.2d 421, 427 (Utah 1986). The Utah Supreme Court has further noted that the historical roots of the ex-post-facto provision prohibit "[e]very law that aggravates a crime, or makes it greater than it was" when the act was committed. *State v. Daniels,* 2002 UT 2, ¶ 44, 40 P.3d 611 (quotations and citation omitted).

¶ 13 In 2003, the State tried and convicted Defendant for incidents of sexual abuse that occurred sometime between January 1994 and March 1997. The sexual abuse statute in effect from January 1994 to March 1997 stated, in relevant part:

(1) A person commits sexual abuse of a child if ... the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14 years of age, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

(2) Sexual abuse of a child is punishable as a second degree felony.

(3) A person commits aggravated sexual abuse of a child when in conjunction with the offense described in [s]ubsection (1) any of the following circumstances have been charged and admitted or found true in the action for the offense:

. . . .

(h) The offense was committed by a person who occupied a position of special trust in relation to the victim; "position of special trust" means *that position occupied by a person in a position of authority, who, by reason of that posi-*

*tion is able to exercise undue influence over the victim,* and *includes, but is not limited to,* the position occupied by a youth leader or recreational leader who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, employer, foster parent, baby-sitter, or adult scout leader, *though a natural parent, stepparent, adoptive parent, or other legal guardian, not including a foster parent, who has been living in the household, is not a person occupying a position of special trust* under this subsection.

Utah Code Ann. § 76–5–404.1 (Supp.1997) (emphases added).

¶ 14 In 1998, the Utah Legislature made a substantive change to subsection (3)(h). The legislature amended the provision to state that a person in a "position of special trust" includes "a youth leader or recreational leader who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, employer, foster parent, baby-sitter, adult scout leader, *natural parent, stepparent, adoptive parent, legal guardian, grandparent, aunt, uncle, or adult cohabitant of a parent.*" *Id.* § 76–5–404.1(3)(h) (2003) (emphasis added).[3] Essentially, both versions of the statute provide a general definition of a "position of special trust" as a "position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim." *Id.* But, the 1998 amendment changed the list of the enumerated positions and eliminated the exclusions.

¶ 15 Version I of the statute expressly excluded the position occupied by a stepparent. *See id.* § 76–5–404.1(3)(h) (Supp.1997). It did not, however, expressly include or exclude the position occupied by an adult cohabitant in the household. *See id.* Version II of the statute changed to expressly include the position occupied by a stepparent, as well as by an "adult cohabitant of a parent." *Id.* § 76–5–404.1(3)(h) (2003).

¶ 16 At trial, the State asserted that Defendant was in a position of special trust because of his status as Mother's adult cohabitant and as S.W.'s stepparent. However, the position of stepparent was not a position of special trust under Version I of the statute. Indeed, the position of stepparent was specifically excluded Version I. Because the State alleged that Defendant committed the offenses between 1994 and 1997, Defendant could only be prosecuted under Version I of the statute. Thus, Defendant's position as S.W.'s stepfather from September 1996 to March 1997 specifically excluded him from being considered a person occupying a position of special trust during that particular time period. Clearly, it was error for the trial court to instruct the jury that regarding the sexual abuse that occurred from September 1996 to March 1997, Defendant occupied a position of special trust because he was S.W.'s stepparent.

¶ 17 However, from January 1994 to September 1996—the remainder of the charged time period—Defendant was not a stepparent, but Mother's adult cohabitant. Adult cohabitants were not expressly included or excluded as among those occupying positions of special trust in the Version I of the statute. *See id.* § 76–5–404.1(3)(h) (Supp.1997). Accordingly, we turn to the general definition of a position of special trust. As previously stated, a person in a position of special trust is one in "a position of authority, who, by reason of that position is able to exercise undue influence over the victim." *Id.* The statute provides this general definition and then includes a list of specific positions. The statute also states that positions of special trust are not limited to the included list. *See id.* Thus, so long as Defendant was able to exercise undue influence over S.W. by reason of his position as Mother's adult cohabitant from January 1994 to September 1996, he could be considered a person occupying a position of special trust under Version I of the statute.

¶ 18 At trial, Mother testified that she typically worked graveyard shifts, either

---

3. The legislature again amended the statute in 2003. *See* Utah Code Ann. § 76–5–404.1 (2003) (amendment notes). However, these changes were minor and are not relevant to the issues before this court. For the sake of convenience, we refer to two versions of the statute: that in effect from 1994 to 1997 (Version I) and that in effect from 1998 to 2003 (Version II).

from 3:00 p.m. to 3:00 a.m. or from 7:00 p.m. to 7:00 a.m., and that Defendant would babysit the children while she was at work. S.W. testified that Defendant would babysit her and her siblings on weekends as well. Moreover, the evidence indicates that Defendant lived with Mother, S.W., and S.W.'s siblings as part of their family. Based on this evidence, we conclude that the jury could have found that Defendant, as Mother's adult cohabitant, was able to exercise undue influence over S.W. and, thus, occupied a position of special trust from January 1994 to September 1996. Accordingly, it was harmless error for the trial court to instruct the jury that an adult cohabitant occupies a position of special trust. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991) (defining harmless error as "an error that is 'sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.'" (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989))). However, the trial court should have instructed the jury that it could only find Defendant occupied a position of special trust as Mother's adult cohabitant between January 1994 and September 1996, when he was living with Mother, and not when he was married to Mother.

¶ 19 Still, regardless of the errors in the jury instruction pertaining to Defendant's position of special trust, we do not resolve Defendant's plain error argument on appeal. Near the end of trial, the trial court asked defense counsel whether he had any objections to the instructions. Defense counsel responded, "No." A defendant may not obtain plain error review of an alleged instructional error when "counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction." *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111. Therefore, because Defendant invited any error, he is not entitled to plain error review of the challenged instruction. *See State v. Pinder*, 2005 UT 15, ¶ 61, 114 P.3d 551 ("[W]e have consistently declined to review allegations of jury

instruction error, even under the manifest injustice standard,[4] when the error complained of was invited.")

B. Ineffective Assistance of Counsel

¶ 20 Second, Defendant argues that his trial counsel rendered ineffective assistance for failing to object to the jury instruction that included stepparent and adult cohabitant as persons occupying a position of special trust. To prevail on an ineffective assistance of counsel claim, "[D]efendant must demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment" and that "counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

¶ 21 Under the first prong of the *Strickland v. Washington* ineffective assistance of counsel test, *see* 466 U.S. at 687–88, 104 S.Ct. 2052, we conclude that defense counsel's performance was deficient because counsel did not object to the jury instruction based on an ex-post-facto law. However, this is not an easy issue. We acknowledge this court's contrary decision in *State v. Marble*, 2007 UT App 82, 157 P.3d 371, a case factually similar to this one. In *Marble*, we held that defense counsel was not deficient for stipulating to the aggravating factor that the defendant was in a position of special trust because he was the victim's natural parent. *See id.* at ¶ 20. This court's decision was based, in part, on the fact that defense counsel made a legitimate, strategic decision to stipulate to the aggravating factor. *See id.* at ¶ 21. We reasoned that "[b]y stipulating [to] ... a position of special trust, defense counsel was able to persuade the State to drop the other aggravating factor—that [the defendant] had committed five or more acts of sexual abuse before, after, or as part of the same course of conduct." *Id.* We noted that this was sound trial strategy because by stipulating, defense

---

4. We note that the manifest injustice standard under rule 19(e) of the Utah Rules of Criminal Procedure, *see* Utah R.Crim. P. 19(e), is generally reviewed under "the same standard that is ap-

plied to determine whether plain error exists." *State v. Rudolph*, 970 P.2d 1221, 1226 (Utah 1998).

counsel could limit the jury's exposure to detailed evidence suggesting a systematic history of sexual abuse. *See id.* We further noted that this is especially true where the defendant's "tactical efforts were focused on denying [that] the alleged abuse occurred, not on challenging the applicability of an increased prison term if convicted." *Id.; see also State v. Alfatlawi,* 2006 UT App 511, ¶ 28, 153 P.3d 804 (noting that defense counsel did not perform ineffectively because the "[d]efendant's trial strategy focused on the identity of the perpetrator, not whether [the d]efendant would be subject to an increased prison term if convicted").

¶ 22 Although *Marble* is seemingly analogous to the facts in this case, there is one distinguishing fact: in *Marble,* the State initially alleged two different aggravating factors. *See* 2007 UT App 82 at ¶ 5, 157 P.3d 371. If defense counsel had objected to one, the State would have simply prosecuted under the alternative aggravating factor. In this case, however, the State only alleged one aggravating factor—that Defendant occupied a position of special trust because he was a stepparent and adult cohabitant. Here, if trial counsel objected to the jury instruction defining a position of special trust as a stepparent, then the State could not have simply pursued an alternative aggravating factor without going back to the beginning of the prosecution. Thus, we see no tactical advantage for not objecting to the clearly erroneous jury instruction. By not objecting to the instruction, defense counsel's performance was deficient.

¶ 23 With respect to the second prong of the *Strickland* test, Defendant must show that absent counsel's failure to object to the jury instruction, there was a reasonable probability of a more favorable result. *See* 466 U.S. at 687–88, 104 S.Ct. 2052. Such a showing must be based on a "demonstrable reality and not a speculative matter." *State v. Chacon,* 962 P.2d 48, 50 (Utah 1998).

¶ 24 After carefully reviewing the record, we conclude that Defendant was not prejudiced by his counsel's failure to object to the jury instruction regarding whether Defendant held a position of special trust. There is overwhelming evidence to support the jury finding that Defendant committed four acts of sexual abuse during the time he was an unmarried adult cohabitant and was, thus, subject to enhancement as a person occupying a position of special trust. At a minimum, there is specific evidence of at least one sexual abuse incident occurring in Salt Lake County during the summer of 1996, before Defendant married Mother. S.W. gave a detailed explanation of sexual abuse that occurred after Defendant and S.W. had gone to a storage unit. S.W. remembered that incident specifically because when she and Defendant came home from the storage unit, Mother was not there. Mother had taken S.W.'s sister to the hospital to have a tick removed, and while they were gone, Defendant sexually abuse S.W. Mother testified that this incident occurred during the summer of 1996.[5]

¶ 25 The other incidents of sexual abuse are not as easily placed within a specific time frame. Still, although it is unclear when exactly the other incidents of sexual abuse occurred, S.W. testified that the incidents occurred "a couple of times a week." Further, Officer Lane Cole testified that after interviewing S.W. and Mother, he determined that the abuse was ongoing, starting at least as early as May 1996. According to this trial testimony, Defendant would have abused S.W. on approximately twenty-four to thirty-two occasions during the summer of 1996. Therefore, a jury could have easily found that Defendant committed at least four acts of sexual abuse during the summer of 1996, before Defendant became S.W.'s stepparent.

¶ 26 During the charged time period, Defendant was a cohabitant for over two and a half years and was a stepparent for only six

---

5. S.W. also gave detailed testimony of an incident of sexual abuse that occurred during a camping trip to Jordanelle Reservoir in Wasatch County. Although this testimony does provide evidence of the nature of the abuse during the summer of 1996, it does not support any of

Defendant's convictions for aggravated sexual abuse. The State prosecuted Defendant in Salt Lake County, and he can only be tried for incidents of abuse that occurred in Salt Lake County, as explained later in this opinion. *See* Utah Code Ann. § 76–1–202(1) (Supp.2007).

months. Based on this and other evidence, we are not persuaded that, had Defendant objected to the jury instruction regarding Defendant's position of special trust and succeeded in having the trial court give the proper instruction, there was a reasonable probability of a more favorable result.

## II. Defendant's Improper Venue Claim

¶ 27 Defendant next argues that the State improperly prosecuted Defendant in Salt Lake County for an incident of sexual abuse that took place in Wasatch County, while Defendant, Mother, and Mother's children were camping at Jordanelle Reservoir.[6] We conclude that Defendant's argument fails.[7] At trial, S.W. not only testified that she was sexually abused numerous times, but also testified that she specifically remembered one instance of sexual abuse when they were camping in Wasatch County. Defendant argues that this evidence was improper because Defendant was prosecuted in Salt Lake County and cannot therefore be prosecuted for a crime in Salt Lake County that was committed in Wasatch County.

¶ 28 Utah's venue statute provides that "[c]riminal actions shall be tried in the county, district, or precinct where the offense is alleged to have been committed." Utah Code Ann. § 76–1–202(1) (2003). Thus, because Defendant was tried in Salt Lake County, he can only be tried for crimes actually committed in Salt Lake County, which is what occurred here. Defendant was charged only with offenses alleged to have occurred in Salt Lake County, and the Information alleged that every count occurred in Salt Lake County.

¶ 29 Although S.W. testified about one incident of abuse in Wasatch County, she testified to well over four counts of aggravated sexual abuse and to well over nine total counts of abuse occurring in Salt Lake County. As to every count, the jury instructions required the jury to find the elements of aggravated sexual abuse "to have been committed ... in Salt Lake County." Essentially, the instructions made clear the jury was asked to find whether Defendant committed aggravated sexual abuse in Salt Lake County. Additionally, the prosecutor, in closing, argued only the incidents that occurred in Salt Lake County. He did not argue to the jury any incidents of sexual abuse that occurred in Wasatch County. Because Defendant was prosecuted only for crimes that occurred in Salt Lake County, we conclude that Defendant has no improper venue claim.

## III. Defendant's Rule 404(b) Claim

¶ 30 Finally, Defendant contends that the State's evidence relating to an incident of sexual abuse committed in Wasatch County violated Utah Rule of Evidence 404(b). *See* Utah R. Evid. 404(b). We disagree.[8] "In deciding whether evidence of other crimes is admissible under rule 404(b), the trial court must determine (1) whether such evidence is being offered for a proper, noncharacter purpose under 404(b), (2) whether such evidence meets the requirements of rule 402, and (3) whether this evidence meets the requirements of rule 403." *State v. Bluff*, 2002 UT 66, ¶ 56, 52 P.3d 1210 (quotations and citation omitted).

¶ 31 First, the evidence of sexual abuse that occurred while camping in Wasatch County was offered for a proper, noncharacter purpose. This court has recently held that "evidence of multiple instances of sexual

6. Defendant also asserts that another alleged incident of sexual abuse would have occurred in Wasatch County. This other incident, however, occurred after a trip to a storage unit in Salt Lake County. Therefore, when reviewing the alleged improper prosecution of sexual abuse that occurred in Wasatch County, we refer solely to the camping trip at Jordanelle Reservoir.

7. Defendant did not object to improper venue at trial; therefore, he raises this argument on appeal under the doctrines of plain error and ineffective assistance of counsel. However, our conclusion that Defendant's improper venue claim fails obviates the need for discussion of plain error or ineffective assistance of counsel.

8. Again, Defendant did not object at trial to the introduction of evidence concerning sexual abuse that occurred in Wasatch County, and therefore, he raises this argument on appeal under plain error and ineffective assistance of counsel. As similarly noted above, because we conclude that this evidence was admissible under rule 404(b), we do not discuss further Defendant's claims of plain error and ineffective assistance of counsel.

conduct with the victim ... does not merely demonstrate [the defendant's] general character or disposition, but instead demonstrates an ongoing behavior pattern which included [the defendant's] abuse of the victim." *State v. Devey*, 2006 UT App 219, ¶ 13, 138 P.3d 90 (quotations and citation omitted). Similarly, in another sexual abuse case, the Utah Supreme Court determined that "evidence of uncharged, related criminal acts is admissible" under rule 404(b) "to establish a specific pattern of behavior by the defendant toward one particular child, the victim." *State v. Reed*, 2000 UT 68, ¶¶ 24, 26, 8 P.3d 1025. In the case before us, we conclude that the evidence of sexual abuse that occurred in Wasatch County was not introduced to show general character or disposition, but to demonstrate an "ongoing behavior pattern which included [Defendant's] abuse of [S.W.]" *Devey*, 2006 UT App 219 at ¶ 14, 138 P.3d 90 (quotations and citation omitted).

¶ 32 Second, the evidence of the sexual abuse in Wasatch County also meets the relevancy requirements of Utah Rule of Evidence 402. *See* Utah R. Evid. 402. Evidence of Defendant's pattern of abuse toward S.W. is relevant "because it [i]s not unrelated" to Defendant's sexual abuse charges. *Devey*, 2006 UT App 219 at ¶ 14, 138 P.3d 90. "[T]o the contrary, the evidence concern[s] [Defendant's] conduct with [S.W.] and the charges in this case." *Id.*

¶ 33 Third, the evidence of sexual abuse in Wasatch County meets the requirements of rule 403 of the Utah Rules of Evidence because its probative value is not "substantially outweighed by the danger of unfair prejudice." Utah R. Evid. 403. S.W.'s testimony of various sexual abuse incidents was highly probative. Because the outcome of this case depended largely on the jury's view of S.W.'s credibility, "as is frequently true of child sex abuse cases," S.W.'s testimony about the incident in Wasatch County allowed her the opportunity to "describe the full scope of the context of [Defendant's] conduct over the relevant time period." *Devey*, 2006 UT App 219 at ¶ 15, 138 P.3d 90 (quotations and citation omitted).

¶ 34 Moreover, the evidence was not unfairly prejudicial because S.W.'s testimony regarding the sexual abuse that occurred in Wasatch County was "essentially interchangeable" with and "of the same nature and character" as her testimony regarding Defendant's conduct in Salt Lake County. "Such evidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury; jurors will either believe or disbelieve the testimony based on the witness's credibility, not whether the witness asserts an act occurred [an additional time]." *Id.* (quotations and citation omitted).

¶ 35 Therefore, we conclude that the evidence of sexual abuse that occurred while camping in Wasatch County was admissible under rule 404(b).

## CONCLUSION

¶ 36 In sum, Defendant first claims that the jury instruction for the aggravating factor to his sexual abuse charges was based on an ex-post-facto law. Because Defendant did not object to the jury instruction at trial, and instead affirmatively represented that he had no objections to the jury instruction, we do not address Defendant's ex-post-facto claim under plain error. Regarding Defendant's ex-post-facto claim under ineffective assistance of counsel, we conclude that Defendant was not prejudiced by his counsel's deficient performance in failing to object to the jury instruction. Next, we conclude that Defendant was only prosecuted for crimes that occurred in Salt Lake County, the county in which he was tried. Therefore, Defendant's improper venue claim fails. Finally, we conclude that evidence of sexual abuse that occurred in Wasatch County was admissible under rule 404(b).

¶ 37 Accordingly, we affirm.

¶ 38 I CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge.

THORNE, Judge (concurring in the result):

¶ 39 I concur in both the result reached by the majority opinion and its analysis, except for its determination that defense counsel's performance was deficient when counsel did

not object to the jury instruction defining a position of special trust based on an ex-post-facto law. I disagree with the majority that there was no tactical reason for failing to object. The majority finds that no tactical advantage exists because if defense .counsel had objected to the jury instruction defining a position of special trust, then the State, alleging only the aggravating factor of special trust, could not have simply pursued an alternative aggravating factor under Utah Code section 76–5–404.1(3), *see* Utah Code Ann. § 76–5–404.1(3) (1995), without going back to the beginning of the prosecution.

¶ 40 Regarding counsel's performance, "'we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy.'" *State v. Alfatlawi,* 2006 UT App 511, ¶ 17, 153 P.3d 804 (quoting *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998)), *cert. denied,* No. 20070144, 168 P.3d 819 (Utah June 12, 2007). "We give counsel wide latitude to make tactical decisions," *Taylor v. Warden,* 905 P.2d 277, 282 (Utah 1995), and we will reverse a conviction based on ineffective assistance of counsel only when there is a "lack of any conceivable tactical basis for counsel's actions," *Bryant,* 965 P.2d at 542 (quotations and citations omitted).

¶ 41 I am not persuaded that there was a lack of any conceivable tactical basis for defense counsel's lack of objection. To the contrary, had defense counsel objected, the State could have decided to pursue an alternate aggravating theory and to charge additional offenses. *See* Utah Code Ann. § 76–5–404.1(4)(g) (aggravating the offense of sexual abuse of a child when "[t]he accused committed ... more than five separate acts, which if committed ... would constitute an offense described in this chapter, and were committed at the same time, or during the same course of conduct, or before or after the instant offense"). Although the State may have been required to go back to the beginning of prosecution to pursue such an alternate aggravating theory, it is nonetheless conceivable that defense counsel made a strategic decision not to object to protect Defendant from additional charges that might be raised as a result. Indeed, S.W.'s and Officer Lane Cole's trial testimony ·provides a basis for such a concern. That testimony demonstrates that Defendant abused S.W. on approximately twenty-four to thirty-two occasions during the summer of 1996.[1] Thus, it is conceivable that defense counsel considered the possibility that additional charges could be forthcoming if the State was forced to proceed under an alternative aggravating theory, and decided not to object. Because I would find that a conceivable trial strategy in not objecting to the jury instruction on special trust exists, Defendant has failed to demonstrate that his counsel's performance was objectively deficient. Therefore, I do not address, nor do I believe, that we need to address the prejudice prong of the *Strickland* test. *See State v. Marble,* 2007 UT App 82, ¶ 15, 157 P.3d 371.

1. At trial, S.W. testified that the incidents occurred "a couple of times a week." Officer Cole testified that after interviewing S.W. and her Mother, he determined that the abuse was ongoing, starting at least as early as May 1996.