2008 UT App 271

STATE of Utah, in the interest of P.F.B. and T.F.B., persons under eighteen years of age.

R.B., Appellant,

v.

State of Utah, Appellee.

No. 20070121–CA.

Court of Appeals of Utah.

July 17, 2008.

———

Scott L. Wiggins, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and John M. Peterson, asst. atty. gen., Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before THORNE, Associate P.J., BILLINGS and McHUGH, JJ.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 R.B. appeals from the juvenile court's Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights, which terminated her parental rights in P.F.B. and T.F.B. We affirm.

## BACKGROUND

¶ 2 R.B. (Mother) is the biological mother of P.F.B., born in 1991, and T.F.B., born in 1996 (the Children).[1] The Children were first removed from Mother's care by the state of Minnesota in 1998, when she was

1. The Children's biological father, G.F., did not participate in the juvenile court proceedings and his whereabouts are unknown. His parental rights were terminated on the basis of abandonment.

arrested on drug charges in Duluth. Mother regained custody of the Children approximately six weeks later, and the case was closed in 1999 when Mother and the Children moved to Nevada. In 2001, Mother and the Children relocated to Utah.

¶ 3 On August 4, 2004, Mother was arrested in Mesquite, Nevada, for possession of methamphetamine and cocaine. Because the Children had been living in Utah the previous two years, a Verified Petition was filed in Utah, and the juvenile court placed the Children in the temporary custody of the Division of Child and Family Services (DCFS). At a dispositional hearing on the petition, the parties stipulated to the return of the Children to Mother's care and custody, subject to protective supervision services. Mother successfully completed the treatment plan ordered in that case, and the juvenile court terminated protective supervision services, released the guardian ad litem, and terminated the court's jurisdiction on May 25, 2005.

¶ 4 On or about July 27, 2006, Mother was again arrested for illegal possession of drugs. At a shelter hearing, the parties stipulated that the removal of the Children was appropriate, and the juvenile court awarded interim custody of the Children to DCFS. At a disposition hearing, the State recommended that no reunification services be offered to Mother. The juvenile court found that it was not in the best interests of the Children to order reunification services. On August 21, 2006, the State filed a Verified Petition for Termination of Parental Rights based on the grounds that, due to her drug problems, (1) Mother had abused and neglected the Children; (2) Mother was an unfit or incompetent parent; (3) Mother neglected, willfully refused, or had been unable or unwilling to remedy the circumstances that caused the removal of the children; (4) Mother failed to make parental adjustment; (5) Mother failed to provide proper parental care and protection to the Children after they were returned to Mother following previous child welfare cases; and (6) Mother had made only token efforts to prevent neglect of the Children.

¶ 5 On August 28, 2006, the juvenile court held a consolidated permanency hearing and pretrial hearing. The State recommended that reunification services not be offered to Mother and that the matter proceed toward the goal of termination of parental rights. Mother testified about her prior success with various outpatient programs and the progress she had recently made, i.e., entering another outpatient treatment program, returning to Alcoholics Anonymous (AA) meetings, attending religious services, and obtaining employment. The juvenile court was not persuaded that reunification services would be successful when they had failed to help Mother secure lasting sobriety in the past, and denied Mother reunification services. At the close of the hearing the juvenile court inquired about the status of the State's request that the court take judicial notice of prior proceedings. The State informed the court that a formal motion would be filed.

¶ 6 On September 5, 2006, the State filed a motion in limine requesting that the juvenile court take judicial notice of facts established at previous proceedings in the case. The juvenile court granted the State's motion the next day and entered an order detailing the scope of its ruling on September 8.

¶ 7 On November 20, 2006, the juvenile court held a termination trial wherein Mother presented evidence that despite the absence of court-ordered reunification services, she had enrolled in and attended an outpatient substance abuse treatment program, been sober for four months, attended AA meetings several times per week, obtained full time employment with the prospect of a promotion, obtained a residence of her own, and stopped seeing her boyfriend two months prior to trial due to his decision to continue using drugs. The State presented evidence that focused on Mother's drug dependence, her parenting ability, and the relationship between Mother and T.F.B.

¶ 8 Mother called three witnesses (a former employer, a friend from AA, and another friend) to testify about her rehabilitative efforts. The State called Dr. Christine Durham, a court-appointed clinical psychologist, to testify regarding Mother's substance dependence and the relationship between Mother and T.F.B. Additionally, Shea Redd, a DCFS caseworker, testified about the relationship between Mother and T.F.B., and

T.F.B.'s foster parents testified about their willingness to adopt T.F.B.

¶ 9 At the close of trial, the juvenile court ordered the parties to brief issues pertaining to *In re B.R.*, 2006 UT App 354, 144 P.3d 231.[2] The parties submitted their briefs at the end of December 2006. On January 5, 2007, the trial court notified the parties that it found the State's trial brief persuasive on the *In re B.R.* issues, and that it intended to terminate Mother's parental rights in the Children. On January 19, 2007, the juvenile court signed its Findings of Fact, Conclusion of Law, and Order Terminating Parental Rights. Mother now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Mother first argues that the juvenile court failed to comply with the Utah Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA) and therefore lacked jurisdiction. Both jurisdictional questions and questions of statutory interpretation are questions of law that we review for correctness. *See Beaver County v. Qwest, Inc.*, 2001 UT 81, ¶ 8, 31 P.3d 1147 ("The determination of whether a court has subject matter jurisdiction is a question of law, which we review for correctness, according no deference to the district court's determination."); *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998) ("The proper interpretation and application of a statute is a question of law which we review for correctness...."). ·

¶ 11 Mother also argues that the evidence was insufficient to support the juvenile court's decision to terminate her parental rights. We will not disturb a juvenile court's termination order unless the court "failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *In*

2. Although it was valid authority at the time of the juvenile court's order, *In re B.R.*, 2006 UT App 354, 144 P.3d 231, has since been reversed and vacated by the Utah Supreme Court. *See In re B.R.*, 2007 UT 82, ¶¶ 1, 16, 171 P.3d 435.

3. Mother raises this issue for the first time on appeal, but jurisdictional issues may be raised at any stage of a proceeding, and we thus consider Mother's argument. *See, e.g., Pleasant Grove City v. Orvis*, 2007 UT App 74, ¶ 6, 157 P.3d 355.

*re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Mother further argues that the juvenile court committed plain error by taking judicial notice of prior proceedings without providing Mother with adequate notice and opportunity to respond. Under the plain error doctrine, we will reverse the trial court's ruling only if (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the defendant. *See State v. Cox*, 2007 UT App 317, ¶ 10, 169 P.3d 806.

¶ 12 Lastly, Mother argues that her appointed trial counsel failed to render effective assistance of counsel. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

### I. UCCJEA Jurisdiction

■ ¶ 13 Mother first argues that the juvenile court lacked jurisdiction to modify a prior custody order allegedly entered by a Minnesota court in 1998 or 1999.[3] Mother bases this argument on the provisions of the UCCJEA, *see* Utah Code Ann. § 78–45c–101 to –318 (2002 & Supp.2007).

¶ 14 Pursuant to the UCCJEA, a Utah court may not modify a child custody determination rendered by a court of another state unless several conditions are met. *See id.* § 78–45c–203 (2002). First, the Utah court must have jurisdiction to make an initial determination over the child under Utah Code section 78–45c–201(1)(a), which requires that Utah be the child's current or recent home state,[4] or under section 78–45c–201(1)(b), which establishes jurisdiction based

4. Utah Code section 78–45c–201(1)(a) grants a Utah court jurisdiction to make an initial child custody determination if "this state is the home state of the child on the date of the commencement of the proceeding" or if Utah "was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." Utah Code Ann. § 78–45c–201(1)(a) (2002).

on certain minimum contacts with the state of Utah in combination with a lack of jurisdiction in any other state.[5] *See id.* §§ 78–45c–201, –203. Additionally, either the court issuing the original decision must determine that it no longer has exclusive continuing jurisdiction or is a less convenient forum than Utah, *see id.* § 78–45c–203(1),[6] or a court of either state must determine that neither the child nor a parent continues to reside in the first state, *see id.* § 78–45c–203(2).[7]

¶ 15 Thus, the juvenile court had jurisdiction to modify the prior Minnesota order if Utah was the Children's home state at the commencement of the proceeding *and* if neither the Children nor either parent continued to reside in Minnesota. *See id.* §§ 78–45c–201(1)(a), –203(2). Although the juvenile court did not make formal findings of fact as to either of these factors, there was no suggestion below that Utah was not the Children's home state or that any relevant person continued to reside in Minnesota. Trial testimony from multiple witnesses established that Mother and the Children had lived in Utah for several years, and the State had proferred at a prior shelter hearing that the father's last known whereabouts were in Chicago. Additionally, the juvenile court made findings that bear, at least tangentially, on the existence of the two factors: that Mother and the Children resided in Utah at the time of termination and that the father's current whereabouts were unknown.

¶ 16 On this state of the record, and absent any assertion by Mother of facts that would destroy jurisdiction, we see no jurisdictional

problem created by the juvenile court's failure to specifically address the factors identified above. At most, a decision in Mother's favor on this issue would result in a remand to the juvenile court to make findings, and prior case law indicates that such a remand is not necessary when the facts below are essentially undisputed. *See, e.g., Flying Diamond Oil v. Newton Sheep Co.,* 776 P.2d 618, 622 (Utah 1989) (holding that remand to resolve the issue of whether a contract could be assigned was unnecessary where contractual language and undisputed facts allowed the appellate court to "fairly and properly resolve the case on the record"); *State v. Mirquet,* 844 P.2d 995, 999 (Utah Ct.App. 1992) ("[W]here, as here, the evidence is essentially undisputed and the undisputed facts support a determination that defendant was in custody, the [district court's] mere failure to recite the precise words of the custody standard does not demand a remand for more specific findings."), *aff'd,* 914 P.2d 1144 (Utah 1996).

¶ 17 The undisputed facts in the record before us strongly suggest that at the time of commencement of the termination proceeding, Utah was the Children's home state and neither the Children nor either parent continued to reside in Minnesota. In the absence of any contrary facts asserted by Mother, we can fairly and properly resolve the case on the record, and we determine that there is no question that the UCCJEA prerequisites have been satisfied in this case. Accordingly, we reject Mother's argument and determine that the juvenile court did

---

5. Utah Code section 78–45c–201(1)(b) grants a Utah court jurisdiction to make an initial child custody determination if
   a court of another state does not have jurisdiction under Subsection (1)(a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 78–45c–207 or 78–45c–208; and
   (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent have a significant connection with this state other than mere physical presence; and
   (ii) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

*Id.* § 78–45c–201(1)(b).

6. Utah Code section 78–45c–203(1) is satisfied when "the court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 78–45c–202 or that a court of this state would be a more convenient forum under Section 78–45c–207." *Id.* § 78–45c–203(1).

7. Utah Code section 78–45c–203(2) is satisfied when "a court of this state or a court of the other state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in the other state." *Id.* § 78–45c–203(2).

have jurisdiction to act under the UCCJEA.[8]

## II. Sufficiency of Evidence for Termination

■ ¶ 18 Mother next argues that the evidence before the juvenile court was insufficient to support the termination of her parental rights. Mother argues that her case is "eerily similar" to *In re B.R.*, 2006 UT App 354, 144 P.3d 231, *vacated*, 2007 UT 82, 171 P.3d 435, in which this court reversed a termination order based on the juvenile court's failure to adequately consider a mother's rehabilitative efforts. Mother also argues that the juvenile court erred in taking judicial notice of prior proceedings where a lower standard of proof applied without giving Mother adequate notice and opportunity to respond. In light of the Utah Supreme Court's decision in *In re B.R.*, 2007 UT 82, 171 P.3d 435, we reject Mother's arguments.

¶ 19 In *In re B.R.*, the Utah Supreme Court made clear that this court is not to substitute its judgment for that of the juvenile court in matters relating to termination proceedings. *See id.* ¶¶ 12–15. Here, the juvenile court considered the evidence of Mother's past drug problems, weighed that evidence against evidence of her more recent rehabilitative efforts, and concluded that termination was both warranted and proper. We are precluded from revisiting this conclusion unless the juvenile court "failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *Id.* ¶ 12. Mother does not establish either of these grounds for reversal, and her own characterization of the matter as nearly identical to a case in which the supreme court affirmed termination essentially resolves the argument against her in any event.[9]

¶ 20 Mother also argues that the juvenile court committed plain error by taking judicial notice of prior proceedings without providing her with adequate notice or the opportunity to respond. Mother emphasizes that the prior proceedings were conducted utilizing a lower standard of proof than the clear and convincing evidence standard required for termination, and argues that the juvenile court's actions diminish the standard of proof to which she was entitled.

¶ 21 We disagree with Mother on each of these arguments. Mother was certainly on notice of the general nature of the allegations against her; indeed, she is complaining about facts that were already established against her at previous hearings. Although the juvenile court granted the State's motion in limine with little or no opportunity for Mother to respond, Mother raised no objection below to the circumstances surrounding the entry of the order. Nor does she provide legal authority to challenge the substance of the order or to demonstrate that she is entitled to relitigate facts and issues previously resolved against her. Because Mother neither establishes that the substance of the juvenile court's order is in error, nor that if given the opportunity she could have provided the court with a legal or factual reason not to enter the order, she has not successfully established plain error. *See State v. Cox*, 2007 UT App 317, ¶ 10, 169 P.3d 806.

¶ 22 We also reject Mother's argument that the differing standards of proof employed at the various hearings diminished the standard of proof to which she was entitled. The juvenile court adequately accounted for these differences in its order, stating:

> The Court hereby finds that the adjudicative facts established by clear and convincing evidence in the prior proceedings

8. We note that the father's parental rights were terminated at the same time as Mother's. The father did not appeal from the termination order, and it has become final as to him. Thus, to the extent that the father's residence in or out of Minnesota cannot be currently established, it is no longer a relevant factor for UCCJEA jurisdictional purposes.

9. Although it is of no import to the resolution of this issue, we note our disagreement with Mother over the similarity between this case and *In re* B.R. While Mother's actions may be roughly analogous to those of the mother in *In re B.R.*, the juvenile court in this case conducted a very thorough analysis of Mother's circumstances in reaching its conclusion, an analysis that was absent in *In re B.R.* In light of the juvenile court's express consideration of Mother's rehabilitative efforts, it is unlikely that we would have disturbed the juvenile court's order on evidentiary grounds regardless of the later directive of the Utah Supreme Court.

in this matter are conclusively established between the parties for the purposes of these proceedings to terminate the parental rights of [Mother] and hereby prohibits the parties or counsel from offering evidence or advancing argument contradicting such facts at trial.

... With regard to adjudicative facts established by a preponderance of the evidence in the prior proceedings in this matter, the Court may in the absence of evidence to the contrary presented at trial, find that such facts are also established by clear and convincing evidence in these proceedings.

Thus, the juvenile court took conclusive notice of only those facts that had already been determined by clear and convincing evidence at previous hearings.[10] As to facts that had been established by the lesser standard of a preponderance of the evidence, Mother was expressly permitted to present contrary evidence at the termination trial. Only if no such evidence was presented would the juvenile court then rely on the evidence and findings from previous hearings to newly find those facts by clear and convincing evidence.

¶ 23 Mother has not identified any shortcomings in the evidence supporting the termination of her parental rights. Nor has she demonstrated either prejudice or plain error arising from the juvenile court's order taking notice of previously established facts. Accordingly, we reject Mother's arguments pertaining to the sufficiency of the evidence in this case.

### III. Assistance of Counsel

■ ¶ 24 Finally, Mother argues that she received ineffective assistance from her trial counsel. Specifically, Mother argues that counsel performed ineffectively by failing to alert the juvenile court to potential problems under the UCCJEA; failing to object to the admission of exhibits pertaining to Mother's criminal history in Minnesota; failing to object to the juvenile court's entry of the order taking judicial notice of prior proceedings; failing to retain an expert witness on the subjects of addiction and relapse; failing to call witnesses who could attest to Mother's rehabilitative efforts; failing to present evidence of Mother's prior completion of a service plan; and failing to object to the vagueness of the allegations contained in the State's petition.[11]

¶ 25 Mother had a right to effective representation of counsel at her termination trial. *See* Utah Code Ann. § 78–3a–913 (Supp. 2007) (guaranteeing assistance of counsel at termination proceedings); *In re C.C.*, 2002 UT App 149, ¶ 7, 48 P.3d 244 (stating that statutory right to counsel implies right to effective counsel). However, in order to establish the ineffective assistance of counsel, Mother must establish both objectively deficient performance by her counsel as well as prejudice to her chances of a more favorable result at trial. *See In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App.1994) ("We therefore adopt the *Strickland* test to determine a claim for ineffective assistance of counsel in proceedings involving termination of parental rights."); *see generally Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶ 26 Mother's cursory briefing of her ineffective assistance claims establishes neither prong of the test for ineffective assistance. As to Mother's claims pertaining to UCCJEA jurisdiction and the juvenile court's granting of the State's motion in limine, we have already rejected Mother's claims of error premised on these issues. As the juve-

---

10. We note that the Utah Supreme Court has approved the practice of juvenile courts making findings by clear and convincing evidence even at hearings where the standard is only the preponderance of the evidence, and also approved the juvenile court's use of those findings in later proceedings. *See In re B.R.*, 2007 UT 82, ¶¶ 8–11, 171 P.3d 435.

11. Mother also alleges ineffective assistance in regard to counsel's preparation of the petition on appeal. After Mother's appointed counsel filed a petition on appeal, Mother retained private counsel who filed an amended petition on appeal. The propriety of that amended petition was challenged by the State and briefed by the parties. However, we elect in this case to address the issues raised in Mother's amended petition and leave the question of the propriety of such amendments for another day. Accordingly, Mother has suffered no prejudice from any ineffectiveness of her appointed counsel related to the petition on appeal.

nile court's jurisdiction and ruling on the motion in limine were proper, objection by counsel would have been futile and counsel's failure to object cannot be deemed ineffective. *See State v. Harter*, 2007 UT App 5, ¶ 26, 155 P.3d 116 (" 'Failure to raise futile objections does not constitute ineffective assistance of counsel.' " (quoting *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546)). Similarly, Mother provides no authority to suggest that her criminal history would have been inadmissible in this matter if properly challenged, given that the general basis for the State's petition was long-term drug abuse by Mother.

¶ 27 Mother's arguments that counsel performed ineffectively in failing to present witnesses and evidence pertaining to Mother's rehabilitative efforts are similarly unsupported. By Mother's own description in her appellate brief, counsel put on substantial evidence of Mother's rehabilitative efforts. However, the juvenile court found that Mother "has had an associated drug habit for 20 years, and has participated in drug treatment programs on approximately 10 separate occasions without successful rehabilitation." Given Mother's lengthy history with drug abuse and failed rehabilitative efforts, we are not convinced that the additional evidence identified by Mother on appeal—general expert testimony on relapse and addiction, testimony from Mother's therapist and drug counselor regarding her more recent rehabilitative efforts, and evidence that she had previously completed a DCFS service plan—would have necessarily made any difference in the juvenile court's analysis.

¶ 28 Finally, Mother complains that counsel should have objected to the vagueness of the allegations in the termination petition. Mother's appellate brief fails to argue how or why such failure amounts to ineffective assistance of counsel. Further, on its face, the petition asserts that Mother had a twenty-year history of drug abuse and had recently been arrested for possession of methamphetamine and cocaine. We see no vagueness in these allegations as grounds for termination of parental rights in that Mother's drug use and efforts to rehabilitate were explored in detail at trial.

¶ 29 In sum, Mother has failed to demonstrate how any of her counsel's alleged shortcomings constituted objectively deficient performance or caused prejudice below. Accordingly, we reject Mother's arguments that she was denied the effective assistance of counsel.

## CONCLUSION

¶ 30 We conclude that the juvenile court had jurisdiction under the UCCJEA; that the evidence in this case is sufficient to support the juvenile court's termination order; that the juvenile court did not err in relying on previously determined facts; and that Mother's counsel did not perform ineffectively. Accordingly, we affirm the juvenile court order terminating Mother's parental rights in the Children.

¶ 31 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.